IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

JEFFERY HAVENS,

    **Plaintiff,**

v.                              **Civil Action No. 1:05-1136**

METROPOLITAN LIFE INSURANCE
COMPANY,

    **Defendant.**

<u>**MEMORANDUM OPINION**</u>

Pending before the court are cross motions for summary judgment. (<u>See</u> Doc. Nos. 11 & 13.) For the reasons outlined below, defendant's motion for summary judgment (Doc. No. 13) is **GRANTED** and plaintiff's motion for summary judgment (Doc. No. 11) is **DENIED.**

**I. Medical and Procedural History**

Plaintiff was formerly employed by SCI Management Corporation ("SCI") as a sales manager at Roseland Memorial Garden. (<u>See</u> Doc. No. 14-2 at 35.) Plaintiff last worked in this capacity on December 11, 2002. (<u>Id.</u>) As an SCI employee, plaintiff was eligible to receive benefits from an employee welfare benefit plan sponsored by his employer offering short-term disability benefits (the "Plan"). (<u>Id.</u> at 2, 7.)

Plaintiff is a morbidly obese man who also suffers from a variety of other medical impairments. (<u>See</u> Doc. No. 12 at 1) (listing impairments). By late 2002, plaintiff's medical

condition had allegedly deteriorated to the extent that he could no longer perform his job as sales manager at a cemetery.  (Id.)

Defendant Metropolitan Life Insurance Company ("MetLife") administered claims for short-term disability benefits ("STD Benefits").  (Doc. No. 14-2 at 2.)  STD Benefits were available up to twenty-six weeks to eligible Plan participants.  (Id. at 9, 11.)  To receive such benefits, the Plan required that a participant "provide certification from a fully licensed physician that [he] is disabled."  (Id. at 9.)  To be "disabled," a participant has to demonstrate that he "cannot perform the essential duties of [his] regular job" and that he "must be under a physician's care."  (Id.)

On December 26, 2002, plaintiff made a claim to MetLife for STD Benefits.  (Id. at 12-14.)  Plaintiff reported that he could not work because of "difficulty breathing."  (Id. at 13.)  Plaintiff's medical diagnosis was "fluid on the lungs."  (Id.)  MetLife initially approved STD Benefits from December 12, 2002, through December 31, 2002.  (See id. at 26.)  At that time, plaintiff was advised that, should he wish to receive benefits past that date, he would need to provide "specific medical information in order to consider the claim for possible continuation of benefits."  (Id.)

On December 31, 2002, plaintiff provided MetLife a Certification of Healthcare Provider form completed by Dr. Shahid

-2-

R. Rana.  (<u>Id.</u> at 149-53.)  MetLife reviewed this information and
extended plaintiff's STD Benefits through January 11, 2003.  (<u>Id.</u>
at 139.)  At that time, MetLife advised him that, should he not
return to work on that date, he would need to provide it with
"specific medical documentation" to evaluate the claim for
further benefits.  (<u>Id.</u>)  MetLife then indicated to plaintiff
that "**[i]t is your responsibility to make sure our office
receives the medical information needed to review [his] claim**"
and stated that the "necessary information" included "Recent lab
or Imaging test results" and "Recent EKG, Echocardiogram and/or
Stress Test results."  (<u>Id.</u>) (emphasis in original).

On January 29, 2003, MetLife wrote plaintiff that his claim
was being closed effective January 11, 2003, because plaintiff
had failed to provide information required for continued
disability benefits.  (<u>Id.</u> at 28.)

On January 30, 2003, MetLife received a facsimile containing
an Attending Physician Statement from Dr. Shahid R. Rana.  (<u>See</u>
<u>id.</u> at 18.)  In this statement, Dr. Rana listed plaintiff's
primary diagnosis as dyspnea, with a secondary diagnosis of
hypertension.  (<u>Id.</u> at 141-43.)  MetLife notes that, though he
was asked to report objective findings supporting his diagnosis,
Dr. Rana does not.  (<u>See</u> Doc. No. 14-1 at 4.)

MetLife reviewed the medical information provided, and on
January 30, 2003, denied plaintiff's claim for continued STD

-3-

Benefits.  (<u>See</u> Doc. No. 14-2 at 137-38.)  MetLife reached this decision after it submitted the information plaintiff provided to a nurse consultant for review.  (<u>Id.</u> at 19.)  Based on this review, MetLife determined that the information provided did not "reveal the severity of a functional limitation to support [plaintiff's] remaining off work."  (<u>Id.</u> at 137.)  MetLife indicated that although Dr. Rana listed plaintiff's cardiac functional capacity as Class 3 (marked limitation), MetLife received "no clinical findings (i.e. test results) to support this."  (<u>Id.</u>)

Based on plaintiff's reported blood pressure, MetLife determined that plaintiff's "hypertension was being controlled by medication."  Further, MetLife stated that it had received "no objective clinical findings to demonstrate functional limitations continuing beyond January 11, 2003," and that there was "no significant evidence of a continuing disabling medical condition."  (<u>Id.</u>)  Based on the lack of "definitive objective evidence that would preclude [plaintiff] from returning to [his] occupation as Sales Manager," his claim for continued STD benefits was denied.  (<u>Id.</u>)

On February 11, 2003, plaintiff forwarded MetLife additional medical information, including a sleep analysis report, office notes from Dr. Khalid Rana, and electromyogram results, which were normal.  (<u>Id.</u> at 69-70.)

-4-

MetLife then sent this information to a nurse consultant for review, and on February 13, 2003, MetLife wrote to plaintiff upholding the termination of his benefits.  (Id. 20, 120-21.) Specifically, MetLife noted that the office notes "indicated persistence of dyspnea, hypertension and edema caused by marked obesity," but noted that "Dr. Rana has not ordered a cardiac evaluation, EKG, stress test or chest X-rays, indicating that these conditions are not cardiac-related.  Additionally, there is no mention of a change in treatment; nor was a diet/exercise plan prescribed."  Further, MetLife evaluated the sleep study provided and acknowledged the presence of sleep apnea but noted that plaintiff's "oxygen levels and heart rate were within normal limits."  The EMG performed on plaintiff's right extremity was also normal.  (See id. at 120-21.)

MetLife found that the medical evidence provided indicated that plaintiff's "primary [medical] condition is obesity, which is resulting in several other medical problems" but that "these problems are being controlled by medication and should not prevent [plaintiff] from performing [his] job."  (Id.)  MetLife denied plaintiff's request for an extension of benefits because plaintiff provided "no objective clinical findings to demonstrate functional limitations continuing beyond January 11, 2003" and because plaintiff had not provided it with "definitive objective

evidence that would preclude [plaintiff] from returning to [his]
occupation . . . . " (Id.)

On June 3, 2003, plaintiff timely appealed MetLife's
termination of STD benefits, providing duplicate copies of his
medical records as well as a vocational evaluation performed by
Robert L. Williams, M.A. ("Williams").  (See id. at 50-106.)
MetLife referred plaintiff's claim for an independent review by
physician consultants specializing in neurology and pulmonology.
(Id. at 47-48.)  Both of these reviewers emphasized the absence
of objective medical evidence demonstrating the severity of
plaintiff's alleged medical problems and functional limitations.
(See id. at 40-42.)

By letter dated August 13, 2003, MetLife upheld its
termination of plaintiff's STD Benefits effective January 11,
2003.  (Id. at 35-37.)  In this letter, MetLife outlined the
reasons for its conclusions and indicated that the information
provided by plaintiff "does not support a disability severe
enough to keep [plaintiff] from performing his job."  (Id. at
36.)

Subsequent to MetLife's denial of benefits, plaintiff
received Social Security Disability Insurance benefits ("DIB")
with an onset date of December 11, 2002.  (See Doc. No. 12 Ex.
1.)  In his motion for summary judgment, plaintiff notes that the
award of these benefits was premised on the same medical

impairments which afflicted plaintiff when he applied for STD

Benefits from MetLife.  (See Doc. No. 12 at 6.)  Plaintiff filed

this civil action on December 12, 2005, seeking a reversal of

MetLife's decision.  (See Doc. No. 1.)

## II.  Standard of Review

A motion for summary judgment may be granted when there are

no genuine issues of material fact and the movant is entitled to

a judgment as a matter of law.  Fed. R. Civ. P. 56(c); Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88

(1986).  Summary judgment is appropriate when the nonmoving party

has the burden of proof on an essential element of his case and

does not make, after adequate time for discovery, a showing

sufficient to establish that element.  Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986).  The nonmoving party must satisfy

this burden of proof by offering more than a mere "scintilla of

evidence" in support of its position.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 252 (1986).

In reviewing an ERISA claim for the denial of benefits, the

court must apply a de novo standard unless the benefit plan

provides the plan administrator or fiduciary with the

discretionary authority to determine eligibility for benefits or

to construe the terms of the plan.  Firestone Tire & Rubber Co.

v. Bruch, 489 U.S. 101, 115 (1989).  If the Plan provides the

plan administrator with discretionary authority, the court

applies an "abuse of discretion" standard, and will not disturb the denial of benefits if the decision is objectively reasonable and based upon substantial evidence.  <u>Firestone</u>, 489 U.S. at 111; <u>Ellis v. Metro Life Ins. Co.</u>, 126 F.3d 228, 232 (4th Cir. 1997).

Here, it is clear that Plan documents give MetLife "responsibility and discretionary authority for providing the full and fair review of determinations concerning eligibility for Program Benefits and the interpretation of Program terms" and provide that "[a]ny determination or interpretation made by MetLife pursuant to the discretionary authority shall be given full force and effect and be binding on the Participant, and SCI Management unless it is demonstrated that the determination was arbitrary and capricious."  (Doc. No. 14-2 at 4.)  As such, the court must determine only whether MetLife's determination in this case was either arbitrary or capricious.

### III.  Cross-Motions for Summary Judgment

The parties here have filed cross-motions for summary judgment.  (<u>See</u> Doc. Nos. 12 & 14.)  It is clear that plaintiff has the burden of establishing that he or she is disabled under ERISA.  <u>See</u> <u>Elliott v. Sara Lee Corp.</u>, 190 F.3d 601, 603 (4th Cir. 1999).  Here, plaintiff contends that MetLife erred through refusing to abide by the Plan's terms and assess all evidence present in the record.  (<u>See</u> Doc. No. 12 at 7.)  For the reasons outlined below, the court rejects plaintiff's argument.

Accordingly, by accompanying Judgment Order, the court grants MetLife's motion for summary judgment.

> **A.   The Language of the Plan Summary Does Not Trump the Plan's Language.  As such, the Plan's Terms Apply.**

Plaintiff's first argument is that he must only meet the requirements outlined in the plan summary, as opposed to the Plan itself, because the full text of the Plan was not initially provided to him.  (<u>See generally</u> Doc. No. 12.)  In his memorandum, plaintiff notes that the summary program description has appended to it the program summary which states that the requirements for "qualifying for benefits" read that:

> In order to receive short-term disability benefits, you must provide certification from a fully licensed physician that you are disabled.  This means that you cannot perform the essential duties of your regular job and you must be under a physician's care.  The disability must be a result of an illness or accidental injury.

(<u>See</u> Doc. No. 14-2 at 9.)

Here, plaintiff contends that the record indicates that he has met these qualifications because (1) he provided information that he was under a physician's care; (2) he provided information which established that he was disabled as a result of an illness or injury; and (3) he provided information which demonstrates that he cannot perform the functions required for his job.  (<u>See</u> Doc. No. 12 at 7-8.)  Plaintiff notes that, because he was provided with only a plan summary instead of the entire text of a

plan, his employer is bound by the statements set forth in the summary.  (Id. at 9) (citing Edwards v. State Farm. Mut. Ins. Co., 851 F.2d 134, 136 (6th Cir. 1988)).

As an initial matter, it is clear that Edwards is inapposite.  Edwards requires a type of conflict between the plan and the summary which does not appear present in this case. See id. at 136.  In Edwards, an insurer that provided covered persons only a plan summary containing misleading language could not later use language contained only in the plan against the covered persons who had relied on the summary to their detriment. See id. at 136 (discussing 29 U.S.C. 1022(a)(1) (1985), which mandates that a summary description must be "written in a manner calculated to be understood by the average plan participant and . . . sufficiently accurate and comprehensive to reasonably apprise . . . participants and benefits of their rights and obligations under the plan.").  In short, Edwards is an estoppel case: where a plan-provided  summary is relied on by a plan participant to the participant's detriment, the plan cannot later use its own misleading language to deny benefits.  See id. (listing cases from various circuits supporting this equitable notion).

Because the factual situation here is so far removed from that of Edwards, it is clear that the language of the plan summary does not govern plaintiff's claims.  First, as discussed below, the term "disability" as used in the plan summary, is

-10-

further outlined in the plan.  Second, there is no conflict
between the plan summary and the actual plan excepting insofar as
the summary includes less detail.  Third, plaintiff incurred no
detriment in reliance on the text of the plan summary analogous
to that incurred by the plaintiff in <u>Edwards</u>.  Plaintiff's
detriment came from portions of the plan summary which can be
read as being consistent with the Plan.  As such, plaintiff's
first argument must be rejected.

> **B.   MetLife's Decision was Reasoned, Principled, and Based
>       on Substantial Evidence.**

Plaintiff's primary argument is that MetLife's decision was
not reasoned, principled, and based on substantial evidence.
Having reviewed the record and applicable case law, for the
reasons outlined below, the court must reject this argument.
MetLife rejected plaintiff's claim because plaintiff failed to
provide objective medical evidence documenting the severity of
plaintiff's medical conditions and resulting functional
limitations.  MetLife is permitted by law to do this.  As such,
plaintiff's arguments fail.

Under the standard of review appropriate for this case,
plaintiff has the burden of demonstrating, based on the record,
that MetLife's decision was unreasonable.  <u>See</u> <u>Marcum v. Zimmer</u>,
887 F. Supp. 891, 896 (S.D. W. Va. 1995).  A decision to deny
benefits is not an abuse of discretion simply because a different
decision might have been logical or even better.  <u>Doe v. Group</u>

<u>Hosp. & Med. Servs.</u>, 3 F.3d 80, 85 (4th Cir. 1993).  A decision
to deny benefits under an ERISA plan is reasonable, and therefore
not an abuse of discretion, "if it is the result of a deliberate,
principled reasoning process and is supported by substantial
evidence."  <u>See</u> <u>Bernstein v. CapitalCare, Inc.</u>, 70 F.3d 783, 788
(4th Cir. 1985).  The quantum of evidence necessary to qualify as
"substantial" is not great; it must be more than a scintilla, but
can be less than a preponderance.  <u>Ellis v. Metro Life Ins. Co.</u>,
126 F.3d 228, 235 (4th Cir. 1997).  Here, MetLife's decision was
supported by substantial evidence.

> **1.   MetLife Had No Obligation to Tell Plaintiff What
> Evidence It Needed to Resolve His Claim Favorably.**

In order to be found disabled under the Plan, plaintiff had
to be unable to "perform the essential duties of his regular
job." (<u>See</u> Doc. No. 14-2 at 9.)  Plaintiff failed to provide
objective medical evidence to support that finding.[1]  Although
plaintiff's treating physician, Dr. Rana, indicated that
plaintiff had a marked limitation regarding his cardiac

---

[1]  The major thrust of plaintiff's argument is that
defendant fails to explain how he can perform his job functions
as outlined while suffering from his various medical conditions.
(<u>See, e.g.</u>, Doc. No. 12 at 4) (discussing Doc. 14-2 at 20-134)
(outlining plaintiff's job functions).  However, plaintiff's
argument is premised on his having first demonstrated the
seriousness of his medical ailments, and the functional
limitations that result from them.  Plaintiff's argument is
predicated on shifting the burden to defendant to provide
evidence.  It must fail because plaintiff has the burden.  <u>See</u>
<u>Elliott v. Sara Lee Corp.</u>, 190 F.3d 601, 603 (4th Cir. 1999).

functional capacity, MetLife concluded that plaintiff provided "no clinical findings (i.e. test results) to support this."[2] (Id. at 137.)

Plaintiff contends that MetLife should have advised him of the specific type of objective evidence that he needed to provide. (See Doc. No. 12 at 9.)  MetLife responds that first, it did inform plaintiff that it needed information such as "recent lab or imaging test results," and "recent EKG, echocardiogram, or stress tests results," in order to pay STD Benefits, and that plaintiff could need to provide "specific medical information," including "diagnostic test results," and "functional abilities" for these benefits to continue. (See Doc. No. 14-2 at 26-27.)  Later, MetLife advised plaintiff that it required "specific medical documentation" to evaluate his claim for benefits after January 11, 2003, and that it was plaintiff's responsibility to make sure its office received the medical information necessary to review his claim. (Id. at 139.)

Second, MetLife states that it was not its responsibility to secure the information necessary for plaintiff to prove his disability.  The Plan states that a claimant "must provide" the information necessary for his or her STD Benefits claim. (Id. at 9.)  Such provisions are permissible under ERISA: the Fourth

---

[2] Even though he was asked for them, Dr. Rana did not list objective findings supporting plaintiff's complaints. (See Doc. No. 14-2 at 141.)

-13-

Circuit has cautioned that plan administrators are "under no duty to secure specific forms of evidence."  Elliott v. Sara Lee Corp., 190 F.3d 601, 609 (4th Cir. 1999).  As MetLife was not required to accept as whole cloth Dr. Rana's conclusions which, from the record, appear based exclusively on plaintiff's subjective complaints, this facet of plaintiff's argument is rejected.

> **2.  Plaintiff Submitted No Objective Medical Evidence in Support of His Claim.**

As discussed above, plaintiff submitted no objective evidence, such as medical test results, in support of his claim.[3] Courts in the Fourth Circuit routinely hold that it is not an abuse of discretion for an ERISA-regulated plan's claim administrator to deny claims unsupported by objective evidence. See, e.g., Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 365, 376 (4th Cir. 2002) ("Because we conclude that [plaintiff] failed to submit objectively satisfactory proof that he was disabled, we hold that Reliance properly denied [his] claim for

---

[3]  Another thrust of plaintiff's argument is that MetLife's determination that "obesity is not considered to be a disabling condition" was arbitrary and capricious. (See Doc. No. 12 at 10-11.)  This statement comes from MetLife's log of activity relating to plaintiff's case.  The court's review of MetLife's decision in the case indicates that it did give consideration to plaintiff's obesity in conjunction with his other medical conditions, however, without the objective medical testing it repeatedly requested, it found that plaintiff had not met his burden of establishing disability under the Plan. (See, e.g., Doc. No. 14-2 at 35-37).

disability benefits."); <u>Hale v. Kemper Nat'l Servs., Inc.</u>, 2005 U.S. Dist. LEXIS 38400, at *38-41 (W.D. Va. Dec. 22, 2005) (upholding a denial of benefits where a claimant's case consisted largely of plaintiff's self-reports of pain to her treating physician).

There is no ERISA equivalent to the treating physician rule found in the Social Security regulations.  As such, claimants who provide physician opinions unsupported by clinical testing frequently lose.  "Without an objective component to this proof requirement, administrative review of a participant's claim for benefits would be meaningless because a plan administrator would have to accept all subjective claims of the participant without question."  <u>Williams v. UNUM Life Ins. Co.</u>, 250 F. Supp. 2d 641, 648 (E.D. Va. 2003).

It is not an abuse of discretion for a plan administrator to require objective evidence when the plan does not specifically require it.  <u>See</u> <u>id.</u>  As defendant notes, it is reasonable for a benefits plan to require such evidence because, without it, "benefits would be payable to any participant with subjective and effervescent symptomology simply because the symptoms were first passed through the intermediate step of self-reporting to a medical professional.  <u>Coffman v. Metro. Life Ins. Co.</u>, 217 F. Supp. 2d 715, 732 (S.D. W. Va. 2002) (finding that a lack of

objective medical evidence warranted the denial of a disability claim).

Plaintiff's repeated assertion that Robert L. Williams, M.A.'s vocational report shows gaps in MetLife's position is unavailing.  Williams is a vocational expert who discusses plaintiff's educational background and psychological profile. (See Doc. No. 14-2 at 51-55.)  His conclusions are based on medical records provided by two doctors, Khalid Rand and Shahid Rana.  (See id. at 54.)  In the course of his report, it is clear that Williams assumes plaintiff's impairments and takes plaintiff's complaints at face value.  (See, e.g., id. at 56.) His report does nothing to solve the real problem with plaintiff's case which is that his physicians' records do not show objective medical testing.  As such, the court must reject this facet of plaintiff's argument.

**C.  MetLife Used the Correct Definition of "Disability" In Evaluating Plaintiff's Claim.**

Next, plaintiff argues that MetLife quoted an incorrect definition of disability in some letters to him, and that this definition was symptomatic of MetLife's "arbitrary and capricious" decision-making.  (See Doc. No. 12 at 8 n.2 & 13.) From the court's review of the record, it is clear that MetLife used the correct definition of disability when it evaluated plaintiff's claims.

MetLife quoted an incorrect definition of disability in some of its letters. (See Doc. No. 14-2 at 120-21, 137-38.) Inbdeed, MetLife admits as much. (See Doc. No. 14-1 at 15.) This said, it is also clear that plaintiff was not prejudiced by MetLife discussing this improper definition, and also that the proper definition was used when MetLife evaluated plaintiff's claim. The mistaken standard would have required MetLife to determine whether plaintiff was "unable to earn more than 80% of [his] Predisability Earnings at [his] Own Occupation for any employer in [his] local economy." (See Doc. No. 14-1 at 137.) The administrative record contains no analysis of either earnings or job availability in plaintiff's local economy, as it necessarily would have had MetLife applied this standard.

The correct standard required MetLife to determine whether plaintiff could "perform the essential duties of [his] job." (See Doc. No. 14-2 at 9.) MetLife complied with this requirement when it reviewed plaintiff's medical documentation for evidence of "functional limitation to support [plaintiff's] remaining off work." (Id. at 137.) It found "no significant evidence of a continuing disabling medical condition" and determined that plaintiff was not "preclude[d] from returning to [his] occupation." (Id. at 137.)

Citing the incorrect standard in two letters does not nullify MetLife's determination. Plaintiff's claim received the

review to which it was entitled.  The proper standard was
applied.  The Fourth Circuit has explained that "not all
procedural defects will invalidate a plan administrator's
decision."  Ellis v. Metro Life Ins. Co., 126 F.3d 228, 235 (4th
Cir. 1997).  "Substantial compliance with the spirit of the
regulation will suffice."  Id.; see also Brogan v. Holland, 105
F.3d 158, 165 (4th Cir. 1997) (stating that substantial
compliance with ERISA regulations exists where the claimant is
provided with "a statement of reasons that . . . permitted a
sufficiently clear understanding of the administrator's position
to permit effective review.").  Here, it is abundantly clear that
the administrator used the proper definition to evaluate
plaintiff's case.  As such, this argument must be rejected.

**D.   Plaintiff's Subsequent DIB Award Has No Bearing On the
       Claims Raised in this Case.**

Implicit in plaintiff's attachment of a Social Security
Disability Insurance Benefit ("DIB") award to his motion for
summary judgment is that it has some relevance to this case.
(See Doc. No. 12 at 17-22.)  It is clear that it is irrelevant
for two different reasons: first, because it was not before the
plan administrator when it reached its decision; and second,
because it is abundantly clear that DIB decisions do not bind
plan administrators.

As MetLife notes, it is clear that evidence submitted after
administrative review cannot be considered by a district court in

most circumstances.  See Bernstein v. CapitalCare, Inc., 70 F.3d
783, 788 (4th Cir. 1985).  Although subsequent evidence may be
necessary, for instance, to show something like fraud on the part
of the plan administrator, see, e.g., Quesinberry v. Life Ins.
Co., 987 F.2d 1017, 1025 (4th Cir. 1983), generally, because the
task of the district court is to review whether the plan
administrator acted rationally given the evidence before it, the
court is not permitted to examine evidence like plaintiff's award
of DIB benefits.  See Elliott v. Sara Lee Corp., 190 F.3d 601,
608-09 (4th Cir. 1999) (finding that a district court is not
permitted to examine evidence that is not before the plan
administrator in reviewing an ERISA decision).

     Further, it is abundantly clear that DIB decisions are not
binding on plan administrators.  See Elliot, 190 F.2d at 604;
Smith v. A.T. Massey Coal Co. Employees' Comprehensive Benefit
Plan, Case No. 5:04-1166, slip. op. at 19-26 (S.D. W. Va. Feb. 3,
2006) (Faber, C.J.) (rejecting many of the underlying bases for
using a subsequent DIB decision in the review of an ERISA plan
administrator's decision).  If DIB decisions did bind plan
administrators, "ERISA fiduciaries would be stripped of all
administrative discretion, and would be required to follow the
decision of the Social Security Administration, even where the
plan determines benefits under a different standard or where the
medical evidence presented is to the contrary."  Ezell v. Dan

-19-

River, Inc., 17 F. Supp. 2d 534, 539-40 (W.D. Va. 2000).  As such, plaintiff's argument premised on the subsequent award to him of DIB benefits must be rejected.

> **E.   Plaintiff Did Not Administratively Exhaust Regarding His Request For Long-Term Benefits.**

Finally, in the conclusion to his memorandum, plaintiff indicates that as he would have been qualified for long-term disability benefits ("LTD Benefits") had MetLife awarded him the STD Benefits it denied him, the court should award LTD Benefits here.  The record provides no indication that plaintiff ever applied for LTD Benefits.  Because plaintiff has never applied for such benefits, MetLife has never evaluated his request for them.  It is clear under ERISA that plan participants "must . . . exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court."  See Communic'ns Workers v. AT & T, 40 F.3d 436, 421-32 (D.C. Cir. 1994).  Where parties fail to exhaust their claims, they must be dismissed.  See Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 227 (4th Cir. 2005).

Here, the Plan's STD Benefits and LTD Benefits require separate evaluations.  (See Doc. No. 14-2 at 11.)  There is no automatic entitlement to LTD Benefits.  As such, and for the reasons outlined above, plaintiff's request for an award of LTD Benefits must be denied because he failed to comply with ERISA's

requirements that he administratively exhaust prior to filing suit.

## IV. Conclusion

For the reasons outlined above, MetLife acted appropriately in denying plaintiff's request for continued STD Benefits.  As such, by accompanying Judgment Order, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.

The Clerk is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

It is SO ORDERED this 14th day of August, 2006.

ENTER:

David A. Faber
Chief Judge

-21-